IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

WALTER J. JONES, JR.,

        Plaintiff,

v.                        Civil Action No. 2:04-cv-00361

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.

Plaintiff, Walter J. Jones, Jr. (hereinafter referred to as

"Claimant"), filed an application for DIB on April 2, 2002, alleging disability as of December 11, 2001, due to degenerative joint disease, disc disease of the lumbar spine, bursitis, bilateral hearing loss, and tinnitus in both ears. (Tr. at 43-46, 107.) The claim was denied initially and upon reconsideration. (Tr. at 27, 32.) On June 13, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 35.) The hearing was held on November 7, 2003 before the Honorable David Antrobus. (Tr. at 298-313.) By decision dated January 28, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-22.) The ALJ's decision became the final decision of the Commissioner on March 26, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 2, 6-8.) On April 14, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R.

2

§ 404.1520 (2003).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2003).  The Commissioner must show two things:  (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this

3

specific job exists in the national economy. <u>McLamore v.</u>
<u>Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant
satisfied the first inquiry because he has not engaged in
substantial gainful activity since the alleged onset date. (Tr. at
15.) Under the second inquiry, the ALJ found that Claimant suffers
from the severe impairments of degenerative joint disease of the
lumbar spine; anxiety with depression; high blood pressure,
controlled; and a hiatal hernia. (Tr. at 17.) At the third
inquiry, the ALJ concluded that Claimant's impairments do not meet
or equal the level of severity of any listing in Appendix 1. (Tr.
at 17.) The ALJ then found that Claimant has a residual functional
capacity for sedentary work, reduced by nonexertional limitations.
(Tr. at 18-19.) As a result, Claimant cannot return to his past
relevant work. (Tr. at 19.) Nevertheless, the ALJ concluded that
Claimant could perform jobs such as a cashier, a surveillance
system monitor, or a dispatcher, which exist in significant numbers
in the national economy. (Tr. at 20.) On this basis, benefits
were denied. (Tr. at 20-22.)

Scope of Review

The sole issue before this court is whether the final decision
of the Commissioner denying the claim is supported by substantial
evidence. In <u>Blalock v. Richardson</u>, substantial evidence was
defined as

4

> "evidence which a reasoning mind would accept
> as sufficient to support a particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with

resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not

abdicate their traditional functions; they cannot escape their duty

to scrutinize the record as a whole to determine whether the

conclusions reached are rational." Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the

Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was 47 years old at the time of the administrative

hearing. (Tr. at 301.) He has a four-year college degree. (Tr.

at 309-10.) In the past, he worked as a correctional sergeant and

served in the United States Marine Corps in chief operations of the

artillery office. (Tr. at 116, 303.)

The Medical Record

The court has reviewed all evidence of record, including the

medical evidence of record, and will discuss it further below as

5

necessary.

Claimant visited the Veteran's Administration (VA) primary care clinic on March 1, 2002. (Tr. at 253.) He reported injuries to his leg, knee and hip in 1995 and stated that he had been suffering with TMJ disorder (temporomandibular joint disorder) for the past ten (10) years. Upon examination, Claimant had free range of motion in all extremities. The examiner diagnosed degenerative joint disease of Claimant's spine, osteoarthritis of both knees, hips, and left shoulder; a hearing impairment, hypertension, anxiety and depression. The physician ordered an upper GI series to rule out gastroesophageal reflux disease. (Tr. at 254.) The results of this test, returned on May 13, 2002, showed a small hiatal hernia of sliding type with a small amount of reflux noted on patient motion, but no lesions or ulcers. (Tr. at 254.)

X-rays dated March 1, 2002 showed slight right-sided scoliosis of the lumbar spine, six lumbar vertebrae, and small spina bifida occulta of S1. (Tr. at 260.) X-rays of Claimant's cervical spine and left shoulder were normal. (Tr. at 258, 259.) Hip, knee, chest and hand x-rays were also normal. (Tr. at 261-8.) On April 9, 2002, Claimant underwent CT scans of his lumbar spine which showed no disc herniation and no central canal or lateral recess stenosis. The scan did reveal annular disc bulging at the L5-L6 level and transitional lumbar vertebra. (Tr. at 246.)

On that same date, April 9, Claimant visited VA mental health

6

consultant Gershon Silber, M.D. (Tr. at 245.) Claimant had a normal IQ, a depressed mood with narrow range of affect, and moderate anxiety. His GAF (Global Assessment of Functioning) score was 60. (Tr. at 245.) Dr. Silber diagnosed an anxiety disorder, prescribed Valium, and scheduled a July return date.

On April 10, 2002, Claimant underwent a full audiological evaluation. Pure tone testing revealed a severe to profound sensorineural hearing loss AU. The notes reflect, however, that speech reception thresholds were not in agreement with these findings. (Tr. at 146-7, 217-8, 241.)

A C&P examination on August 1, 2002 showed degenerative joint disease of Claimant's right acromioclavicular joint, but an otherwise normal exam. (Tr. at 235.) Claimant's knees were also found normal. (Tr. at 233.)

Claimant visited the VA again on September 4, 2002. (Tr. at 226.) He had free range of motion in his extremities, despite degenerative joint disease of his spine which was reported as stable. He had chronic tinnitus, stable hypertension, anxiety and depression for which follow up with a psychiatrist was recommended; hiatal hernia and gastroesophageal reflux disease, helicobacter pylori, for which Regimen II was given; and diarrhea, which was improved from previous reports. (Tr. at 226.)

Claimant underwent an orthopaedic consultation on September 16, 2002. (Tr. at 223.) He could straight leg raise in a sitting

7

position to 75 degrees with pain in his lumbosacral spine. He had tenderness in his lumbosacral spine with mild paraspinal muscle spasm. His extension, abduction and adduction strengths were all within normal limits. He had extreme difficulty transferring from the table to chair, could not stand or walk on his toes or rock or walk on his heels. His squatting was only 25% of normal. (Tr. at 223.) He had no apparent discomfort in range of motion of his hips. Adduction was 20 degrees, abduction was 35 degrees causing increased pain to Claimant's low back bilaterally. (Tr. at 224.) The examiner diagnosed degenerative joint disease of Claimant's lumbosacral spine, bilateral radiculopathy from Claimant's lumbosacral spine, and chronic pain syndrome. The examiner recommended conservative management and referral to a pain clinic. (Tr. at 224.)

On November 4, 2002, Claimant followed up with Dr. Silber for his major depressive disorder.[1] He reported depression due to recent marital difficulties. Claimant's GAF on that date was 55. Dr. Silber described his mood as depressed and his anxiety in the moderate to severe range. Dr. Silber changed Claimant's medication to Prozac and advised him to return in December. (Tr. at 222.)

At the December visit, Dr. Silber noted that Claimant's wife had moved out, and that Claimant's mood was depressed and his

---

[1] The November entry indicates that Claimant attended his July visit with Dr. Silber as scheduled; however, notes from that visit are not included in the record.

8

anxiety was moderate. Claimant's GAF was 58. Dr. Silber maintained the prior diagnosis of depressive disorder, and instructed Claimant to remain on Prozac, which he reported had been helpful. (Tr. at 219.)

Audiological testing on January 13, 2003 yielded much the same results as previous testing. The results were reported as "unreliable" and the severity of Claimant's hearing loss could not be determined. (Tr. at 218.)

On January 31, 2003, Claimant underwent an ENT (ear, nose and throat) consultation at the VA. (Tr. at 217.) The examiner noted that Claimant's recent audiogram results were not consistent with his clinical hearing thresholds. Claimant reported that he had loud tinnitus in both ears which had been relieved somewhat by hearing aids. (Tr. at 217.) Upon physical examination, he had some TM joint problems and tinnitus and crepitus over both TM joints. The examiner diagnosed bilateral sensorinueral deafness probably related to noise trauma with bilateral tinnitus. The examiner further indicated that he spoke to Claimant in a slightly raised voice and that Claimant could hear him "quite well." No further ENT treatment was recommended. (Tr. at 217.)

Claimant underwent a recheck for his joint pain on February 7, 2003. He stated that he wanted a stronger medication for this concern, but that he had no other complaints. (Tr. at 214.) Claimant had free range of motion in his extremities, and all other

9

clinical testing yielded normal results.

In a patient interview that same date, Claimant reported that all of his problems regarding pain were resolved or improved from his last visit.  He stated that his back and hips were still hurting, and that was his main reason for seeking treatment.  (Tr. at 212.)  Depression screening was completed that day and was positive.  (Tr. at 212-13.)

On February 25, 2003, Dr. Silber evaluated Claimant's depression again. (Tr. at 207.)  He described Claimant's anxiety as "mild to moderate", and noted again that Prozac and Elavil had been helpful to Claimant.  Claimant reported that his wife had returned to living with him and he was "very happy about this."  His GAF score on that date was 63.  (Tr. at 207.)

Claimant's hearing was retested on March 6, 2003.  Again, test results were inconsistent with his hearing capabilities, and the testing was deemed unreliable.  (Tr. at 206.)

Days later, on March 10, Claimant returned to the VA as a walk-in patient reporting stomach problems, a two-week history of hemorrhoids, and continued back pain, but refusing work-up.  (Tr. at 204.) He had no other complaints.  (Tr. at 204.) The findings that date were essentially the same as before: Claimant had free range of movement in his extremities, hiatal hernia/gastroesophageal reflux disease, hypertension (high at this visit); hyperlipidemia, degenerative joint disease of the spine,

10

and erectile dysfunction.  The physician increased Claimant's pain medication and changed his blood pressure medicines, ordered a dietary consult, and prescribed Viagra. (Tr. at 204.)

On April 4, 2003, Claimant returned to the VA with complaints of reflux. (Tr. at 196.)  He had mild epigastric tenderness, with no rebound or guarding.  The examiner diagnosed GERD, due to the fact that symptoms had been present since 1994, had worsened, and were no longer corrected by medication.  (Tr. at 189, 196.)

On July 30, 2002, Claimant underwent a disability determination evaluation by Nilima Bhirud, M.D. (Tr. at 148-53.) Claimant reported daily headaches due to TMJ arthritis.  He also complained that he had suffered back pain since 1991, worsened by prolonged standing and walking, such that he could stand less than five minutes at a time, could sit 20 minutes at a time, and could walk two to three blocks at a time.  Claimant related that he had never been to therapy.  (Tr. at 148.)  He further stated that he could not grip anything heavy with his hands and that he dropped things.  Lifting his arms over his head exacerbated his shoulder pain.  (Tr. at 149.)

Upon examination, Claimant was unable to stand on either foot at a time, could not heel-walk, toe-walk or squat. (Tr. at 149.) His forward flexion was 45 degrees at the lumbar spine.  He could not pick up a coin from the floor or walk in tandem gait.  He could not walk without his cane and was uncomfortable getting onto the

11

examination table. (Tr. at 149.) He had no tenderness in his cervical or thoracic spine, and he had normal range of motion in his neck. (Tr. at 150.)

Dr. Bhirud recorded that Claimant's blood pressure was normal and that his ears were normal except for TMJ tenderness. He had moderate tenderness and a straight leg raising test positive at 30 degrees bilaterally, but had no sensory or motor defect. (Tr. at 150.) His hand grips were 10 pounds bilaterally and his hand joints were normal. Claimant had decreased range of motion but no tenderness in his hips. Movements of his hips and knees produced backache. (Tr. at 150.) While Claimant reported bilateral hearing loss, he could hear Dr. Bhirud's conversation. (Tr. at 151.)

A Physical Residual Functional Capacity Assessment form was completed by Rafael A. Gomez, M.D. on August 13, 2002. (Tr. at 154-60.) Dr. Gomez reviewed Claimant's June 2002 audiology exam, Dr. Bhirud's consultative evaluation, records from May 2002 relating to Claimant's hiatal hernia, and the April 2002 radiology reports. (Tr. at 159.) Dr. Gomez opined that Claimant had no manipulative, visual or speaking limitations, but did have hearing limitations. (Tr. at 155-6.) He had no environmental limitations except that he should avoid concentrated exposure to noise, vibration, and hazards. (Tr. at 156.) Dr. Gomez concluded that Claimant was limited to medium work. (Tr. at 157.)

Dr. Gomez was later asked to review his findings in light of

12

their discrepancy with Dr. Bhirud's findings that Claimant could not walk without his cane. Claimant relayed that he had used the cane to walk, stand and balance since July 2001. (Tr. at 183.) In his response on September 5, 2002, Dr. Gomez noted that Dr. Bhirud did not explain her comment that Claimant could not walk without his cane. Dr. Gomez remarked that Claimant had multiple complaints that could not be correlated by physical examination; in particular, that he had no herniated disc, but only a bulging disc as shown on the MRI. His neurological exam and motor power were normal. (Tr. at 183.)

Dr. Gomez completed a second Residual Functional Capacity Assessment form on February 17, 2003. (Tr. at 175-182.) He opined that Claimant could occasionally lift or carry 10 pounds; frequently lift or carry less than 10 pounds; could stand or walk with normal breaks at least 2 hours in an 8-hour workday, using a cane; could sit for about 6 hours in an 8-hour workday; and could engage in unlimited pushing/pulling. (Tr. at 176.) He further opined that Claimant could never climb ladders, ropes or scaffolds, and could never crawl, but could occasionally balance, stoop, kneel, and crouch. (Tr. at 177.) He had no manipulative limitations and no speaking limitations, although his hearing was limited. (Tr. at 178-9.) Claimant should avoid concentrated exposure to noise, vibration, and hazards, but had no other environmental restrictions. (Tr. at 179.)

13

When asked to review these findings in February 2003, Dr. Gomez responded that there was no justification for reducing Claimant's capacity to less than sedentary work. (Tr. at 160.)

Rosemary Smith, Psy.D. completed a Psychiatric Review Technique form on August 20, 2002. (Tr. at 161-174.) She opined that Claimant suffered an anxiety-related disorder, but that this impairment was not severe. (Tr. at 161.) She found that Claimant had mild restriction in activities of daily living and maintaining social functioning, as well as difficulties maintaining concentration, persistence, or pace. (Tr. at 171.) Claimant's activities of daily living were limited by physical problems. He had a depressed mood and moderate anxiety, but his IQ was normal and his sensorium were clear. (Tr. at 173.) Debra L. Lilly, Ph.D. reviewed the case and affirmed these findings on May 10, 2003. (Tr. at 161.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to properly assess Claimant's pain and his credibility; (2) the ALJ failed to consider Claimant's impairments in combination; and (3) the ALJ's decision was not supported by substantial evidence. (Pl.'s Br. at 14-20.) The Commissioner refutes each of these arguments and contends that substantial evidence supported the ALJ's decision in all respects. (Def.'s Br. at 7-15.)

14

I.    Pain/Credibility Analysis

Claimant argues that the ALJ failed to properly evaluate his pain and his credibility. (Pl.'s Br. at 16-17.)  Claimant refers to the September 16, 2002 report from the VA indicating that he had degenerative joint disease, bilateral radiculopathy from his lumbosacral spine, and chronic pain syndrome. (Tr. at 223-224.) He also relies upon a disability rating decision dated November 27, 2002 which summarized many of his VA medical records. Claimant appears to argue that his pain and some degree of limitation are documented in his medical records; hence, substantial evidence would support a finding of disability.

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. § 404.1529(b) (2003); SSR 96-7p, 1996 WL 374186 (July 2, 1996); see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated.  Craig, 76 F.3d at 595.  When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical

15

evidence." <u>Mickles v. Shalala</u>, 29 F.3d 918, 919 (4th Cir. 1994).
A claimant's symptoms, including pain, are considered to diminish
his capacity to work to the extent that alleged functional
limitations are reasonably consistent with objective medical and
other evidence.  20 C.F.R. § 404.1529(c)(4) (2003).  Additionally,
the regulations provide that:

> [w]e will consider all of the evidence presented,
> including information about your prior work record, your
> statements about your symptoms, evidence submitted by
> your treating, examining, or consulting physician or
> psychologist, and observations by our employees and other
> persons. . . . Factors relevant to your symptoms, such
> as pain, which we will consider include:
>
>     (i) Your daily activities;
>
>     (ii) The location, duration, frequency, and
> intensity of your pain or other symptoms.
>
>     (iii) Precipitating and aggravating factors;
>
>     (iv) The type, dosage, effectiveness, and side
> effects of any medication you take or have taken to
> alleviate your pain or other symptoms;
>
>     (v) Treatment, other than medication, you receive or
> have received for relief of your pain or other symptoms;
>
>     (vi) Any measures you use or have used to relieve
> your pain or other symptoms (e.g., lying flat on your
> back, standing for 15 or 20 minutes every hour, sleeping
> on a board, etc.); and
>
>     (vii) Other factors concerning your functional
> limitations and restrictions due to pain or other
> symptoms.

In this case, the ALJ found that Claimant had medically
documented impairments that could be reasonably be expected to
produce pain, thereby satisfying the first prong of the analysis.

16

(Tr. at 18-19.) He found, however, that the frequency and severity of symptoms Claimant alleged were not medically supported. In particular, the CT scan of Claimant's lumbar spine showed disc bulging, but no herniation. (Tr. at 18, <u>citing</u> tr. at 246-7.) X-rays of Claimant's hips, knees, feet, chest, shoulders and hands were normal except the right acromioclavicular joint, which showed some degenerative joint disease. (Tr. at 18, <u>citing</u> tr. at 231-36; 242; 258-9; 261-68.) The audiological evaluations showed decreased hearing loss, but the extent of this could not be reliably measured. (Tr. at 18.) Claimant's upper GI series showed a hiatal hernia, sliding type, but only a small amount of reflux. (Tr. at 18.) The ALJ reviewed Claimant's other medical records and the opinions of state agency medical and psychological sources as well. (Tr. at 18.)

Elsewhere in his opinion, the ALJ noted that Claimant's hypertension was controlled, (tr. at 16, <u>citing</u> tr. at 214); that Claimant had no loss of strength in his upper extremities, no listing-type arachnoiditis, pseudoclaudication, or nerve root or spinal cord compression or compromise attributed to his back condition, and no lesions or marked nutritional deficits related to his reflux. (Tr. at 16-17.) He further noted that Claimant had not been hospitalized for his back condition, nor had he undergone surgery. (Tr. at 16, 18.) The ALJ observed that no treating or examining physician had limited Claimant's activities due to

17

musculoskeletal disorders or nerve root impingement. The ALJ then noted Claimant's reports that his medication helped, and that while he himself had limited his daily activities, he was still able to perform a wide range of tasks including personal care, reading, visiting, and doing housework. (Tr. at 18.) The ALJ concluded based on this that Claimant's pain, which he suffered in conjunction with his depression, was no more than mild to moderate in nature and would not preclude him from performing simple, routine, unskilled sedentary tasks. (Tr. at 18.)

According to Craig v. Chater, 76 F.3d 585, 594-5 (4th Cir. 1996), a claimant's allegations of pain need not be accepted if they are inconsistent with the available evidence. That is the case here. The severity of pain which Claimant alleges is not verified by, and is in some respects contradicted by, clinical findings and laboratory results, and by his activities of daily living. No physician has restricted Claimant from sedentary work.

For these reasons, the court proposes that the presiding district judge find that the ALJ's decision as to Claimant's pain and his credibility are supported by substantial evidence.

II. Impairments in Combination

Claimant argues that the ALJ fractionalized and isolated his impairments rather than considering their combined effect upon his ability to work. (Tr. at 18.)

A review of the opinion dispels this argument. The ALJ found

18

sedentary work capabilities based on Claimant's exertional limitations of degenerative joint disease as well as mild to moderate pain, depression, and Claimant's need to be near bathroom facilities after eating. (Tr. at 18-19.) The ALJ specifically noted both Claimant's pain and depression: "...his pain, which he does have *in conjunction with his depression*, is no more than mild to moderate in nature and would not preclude him from performing simple, routine, unskilled sedentary tasks." (Tr. at 18.) Finally, the fact that the ALJ considered the impairments in combination is reflected by his hypothetical question to the vocational expert: he asked her to assume a claimant capable of sedentary work, with nonexertional limitations of notable pain in his back and hips, mental depression, a need to be near a bathroom after eating. (Tr. at 310.)

The medical evidence supports the ALJ's assessment. There is no evidence that Claimant was limited beyond the degree found by state agency medical sources, who suggested sedentary work, at minimum. These sources evaluated Claimant's overall condition based on the complete records provided, rather than considering his impairments in isolation. (Tr. at 159-60, 180-81, 274-76.)

Experts who reviewed Claimant's mental health records declined to place any limitations on his ability to work. As the ALJ noted, Claimant had no episodes of decompensation; psychologists noted no impairments in his activities of daily living due to mental

19

disturbances; he was not withdrawn; he was getting along with others; and he participated in church. (Tr. at 17, 173.) He could watch television, read, and maintain his schedule of doctor visits and his medications. (Tr. at 17, 173.)

So too do Claimant's GAF scores reflect his capacity for sedentary work. His scores regularly fell in the moderate to mild range, and did not persist at a disabling level for a period of twelve months as required by 20 C.F.R. § 404.1520a(d)(1).

For these reasons, the court proposes that the presiding district judge find that the ALJ properly considered Claimant's impairments in combination; and that his decision was supported by substantial evidence.

III. Substantial Evidence

Claimant's final argument is that the ALJ's decisions were not supported by substantial evidence. That argument has been largely addressed by (I) and (II) above. In his Brief, however, Claimant argues anew that the ALJ failed to consider his GAF scores of 55 (November 2002, tr. at 222) and 60 (April, 2002, tr. at 245)[2].

The regulations provide that a disabling impairment must last or be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A)(2003). A mental impairment is not considered severe if it involves no more than mild limitations

_____

[2] Claimant mistakenly argues that his GAF score on April 9, 2002 was "50." However, the record reflects a GAF of 60.

20

in the primary mental domains. 20 C.F.R. §404.1520a(d)(1)(2003). Drs. Smith and Lilly both concluded that Claimant had only mild mental limitations. (Tr. at 171, 173.) Claimant's GAF scores did not remain in the range of 51-60 (moderate range), but instead improved within a one-year period. Claimant cannot establish a mentally disabling condition in light of this evidence.

The court proposes that the presiding district judge find that the ALJ's decision was supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Motion for Summary Judgment, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good

21

cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

_May 4, 2005_
Date

Mary E. Stanley
Mary E. Stanley
United States Magistrate Judge

22